**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WESLEY T. CARTER,<br>1233 Town Center Drive<br>For Collins, Colorado 80524,<br><br>Plaintiff,<br><br>v.<br><br>HEATHER A. WILSON, SECRETARY OF THE UNITED STATES AIR FORCE, in her official capacity,<br>1670 Air Force Pentagon<br>Washington, DC 20330-1670,<br><br>Defendant. | Civil Action No. 17-2143 |

## COMPLAINT

This is an action seeking judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, of a final decision of the United States Air Force Board for Correction of Military Records ("BCMR").

## JURISDICTION AND VENUE

1. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 706.

2. Personal jurisdiction is proper pursuant to 5 U.S.C. §§ 702-03. This Court may award relief pursuant to the APA, 5 U.S.C. §§ 703 and 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

3. Venue lies in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

4. Plaintiff Wesley T. Carter was an Air Force Reservist who retired at the rank of Major. Between 1974 and 1980, Major Carter worked on Air Force aircraft contaminated by Agent Orange. He now suffers from several illnesses, as acknowledged by the Department of Veterans Affairs ("VA"), due to Agent Orange exposure and is terminally ill. Major Carter files this action because the BCMR arbitrarily and capriciously denied him a Line of Duty ("LOD") determination reflecting his exposure to Agent Orange between 1974-1980.

5. Defendant is the Secretary of the United States Air Force, in her official capacity, as head of the United States Department of the Air Force and the BCMR.

## FACTUAL BACKGROUND

### "Operation Ranch Hand" and Agent Orange

6. In 1962, early in the Vietnam War, the United States developed a program that would have lasting effects on the Vietnamese peninsula and on American service members. Over the course of nearly a decade, U.S. forces would spray approximately 20 million gallons of herbicide over the South Vietnamese jungle, destroying hundreds of acres of foliage and food crops. The operation served to deprive guerilla forces of valuable cover and to clear routes for military transportation; it also destroyed much of the enemy's food source. Codenamed "Operation Ranch Hand," it would last until 1971. The most prevalent of the herbicides sprayed — comprising 12 of the 20 million gallons — was Agent Orange.

7. Agent Orange is toxic to humans. It contains 2,3,7,8-tetrachlorodibenzo-p-dioxin (TCDD or "dioxin"), a human carcinogen and skin irritant absorbed into the body through the mouth, skin, and lungs. Dioxin exposure has been linked to numerous cancers, birth defects, respiratory disease, cardiovascular illness, and skin lesions. Dioxin is a highly persistent

compound — that is, it degrades slowly over time and remains toxic for years. Because of its persistent qualities, dioxin does not merely affect individuals in its zone of application; those exposed to residual Agent Orange may also face adverse health effects.

8. The United States military used a squadron of low-flying, high-capacity C-123 cargo planes to spray Agent Orange. *Patches* (Tail # 362) was one such plane. *Patches* returned to the United States in 1972 and until 1980 served stateside in the Air Force Reserve. In 1979, the Air Force conducted sampling tests of the C-123s and found that the planes had herbicide residue (the "Conway Report"). The Conway Report, however, did not screen for dioxin.

9. In a 1994 study commissioned in preparation for the display of *Patches* in the National Museum of the Air Force near Dayton, Ohio. Air Force toxicologists concluded that *Patches* was "heavily contaminated on all test surfaces" and posed a "danger to public health." In other words, two decades after the war ended, and twenty-two years after being repatriated, *Patches* still posed a substantial health risk to the public — so much so that it could not immediately be displayed in the museum.

10. *Patches* was eventually displayed in the museum after two years of extensive decontamination efforts. Other C-123s were deemed so hazardous that in 2010 the Air Force had them melted into scrap metal.

11. Despite mounting evidence of its toxicity, the VA persistently declined to acknowledge the adverse health effects of Agent Orange. The VA was especially reticent to accept the danger of Agent Orange in its residual form. In practice, before awarding compensation, the VA often demanded exacting evidence of causation between exposure and illness — a prohibitively high hurdle that many veterans were powerless to surmount

12. In 1991, Congress relieved certain veterans — those who served in-country during the Vietnam War — of that evidentiary burden. The Agent Orange Act, codified at 38 U.S.C. § 1116, established a statutory presumption in favor of those veterans; for conditions known to be associated with Agent Orange exposure, the VA was directed to presume a causal link. In other words, and in VA parlance, Vietnam veterans who were exposed to Agent Orange are, for certain conditions, entitled to a presumption of "service connection" — thus allowing them to claim medical benefits for Agent Orange-related illnesses.

13. In light of the Agent Orange Act, the VA promulgated regulations listing the medical conditions for which it would presume a service connection. These conditions include chloracne (skin lesions), type 2 diabetes, Hodgkin's disease, ischemic heart disease, all chronic B-cell leukemias, multiple myeloma, non-Hodgkin's lymphoma, Parkinson's disease, early-onset peripheral neuropathy, prostate cancer, and multiple respiratory cancers.

14. In 2015, the Institute of Medicine of the National Academies issued a report entitled, "Post-Vietnam Dioxin Exposure in Agent Orange-Contaminated C-123 Aircraft." The report presented evidence that, even though the Vietnam War had ended, the presence of Agent Orange on C-123s had not, and that crewmembers continued to be exposed to the herbicide.

15. In response to this report, the VA amended its regulations in June 2015 to expand benefits to Air Force and Air Force Reserve flight, medical, and ground maintenance crewmembers who served on contaminated C-123s after the Vietnam war ended. For the first time, Reservists who had not served in the Vietnam War, but who had "regularly and repeatedly operated, maintained, or served onboard" Operation Ranch Hand's C-123 aircraft, were entitled to a presumption of service connection for their Agent Orange caused medical conditions. Major Carter, the Plaintiff in this action, is one such Reservist.

16. The VA, however, extends that presumption only prospectively from the date of the amended regulations, *i.e.*, June 2015. To recover benefits for medical costs incurred prior to that date, veterans must have an LOD from the Air Force so that the VA can make a determination whether their medical conditions were service-related.

**Major Carter's Service and Illnesses**

17. Major Carter served in the Air Force Reserve from 1974 to 1996. From 1974 to 1980, he flew on contaminated C-123s, including *Patches*, as an aeromedical evacuation technician, flight instructor, and flight examiner with the 74th Aeromedical Evacuation Squadron at Westover Reserve Base in Massachusetts. Major Carter flew hundreds of hours on C-123s; he also spent hundreds of hours in or around such aircraft, loading patients, performing repairs, practicing wartime tactical drills, cleaning the aircraft, eating meals, training others, and sleeping overnight. In short, Major Carter "regularly and repeatedly operated, maintained [and] served onboard" C-123 aircraft.

18. Major Carter now suffers from numerous medical conditions that the VA recognizes as entitled to the presumption of service connection, including ischemic heart disease, prostate cancer with invasion of the bladder, avascular necrosis with bilateral hip replacements, peripheral neuropathy, and diabetes (leading to the loss of both feet). Major Carter's cancer is judged catastrophic and terminal by the VA.

19. At the time of his retirement from the Air Force in 1996, Major Carter had not been diagnosed as suffering from heart disease, diabetes, or prostate cancer. Major Carter was diagnosed with diabetes in 2005 and heart disease and prostate cancer in 2010.

**The BCMR and the Line of Duty Determination**

20. Service members who suffer disabilities in the line of duty generally receive disability compensation from the VA; some are eligible to receive additional payments from the Department of Defense. Under 10 U.S.C. § 1413a, veterans injured in combat or while engaged in hazardous service are entitled to such additional benefits. The implementing DOD program is referred to as Combat-Related Special Compensation ("CRSC"). Under CRSC, eligible military retirees receive additional monthly compensation beyond their VA benefits.

21. Agent Orange-associated disabilities are combat-related; veterans with those disabilities are eligible for CRSC. To be eligible for CRSC benefits, however, veterans must have a VA disability rating associated with one of the recognized ailments. The first step in such an effort is to request from the respective branch of service an LOD determination — in essence, a finding that the disability was acquired in the line of duty and caused by an instrumentality of war. One of the principle purposes of the LOD determination is to facilitate the provision of military and veterans' benefits.

22. According to his military records, Major Carter was placed on the Temporary Disability Retired List in August 1994 and then later retired from military service due to permanent disability with an effective date of March 28, 1996.

23. On April 30, 2015, citing the impending new VA regulations recognizing that exposure to Agent Orange caused major adverse health effects regardless of whether the exposure occurred during the Vietnam War or afterward, Major Carter petitioned the Air Force BCMR for an LOD determination. Citing, *inter alia,* his heart disease, diabetes, peripheral neuropathy, and prostate cancer, Major Carter requested a finding that his injuries were caused by "instruments of war."

24. In a decision dated June 18, 2016, the BCMR denied Major Carter's request as untimely by invoking the 180-day rule from Air Force Instruction ("AFI") 36-2910, whereby a Reservist must present a claim within 180 days from a Reservist's separation from service. This 180-day deadline does not apply to veterans who retired from active duty service in the Air Force. The BCMR stated that "LOD claims not addressed within 180 days of completion of the period of service are addressed to the [VA] for resolution." By mechanically invoking the 180-day rule, the BCMR deprived Major Carter of CRSC benefits for medical costs incurred prior to June 2015. These benefits are distinct from the prospective benefits the VA provides for Agent Orange related medical conditions, which only cover medical costs incurred after June 2015.

25. Major Carter could not have met the BCMR's 180-day deadline because the United States government did not acknowledge that post-Vietnam War service on C-123s exposed crewmembers to Agent Orange until years after Major Carter completed his service.

26. Major Carter could not have met the BCMR's 180-day deadline because the relevant conditions — diabetes, prostate cancer and heart disease — are latent diseases that developed slowly and remained undiagnosed (through no fault of Major Carter's) for an extended period of time.

27. In relying on a 180-day filing deadline applicable only to reservists to reject Major Carter's petition, the BCMR relied on a distinction between Air Force veterans and Air Force Reserve veterans that serves no legitimate or rational purpose in the context of combat-related latent diseases.

28. In relying on a 180-day filing deadline and directing Major Carter to the VA, the BCMR deprived Major Carter of any opportunity to receive benefits to cover the costs of medical care pre-dating June 2015 due to the prospective nature of the VA's regulations.

29. By refusing to consider Major Carter's request on the merits, the BCMR deprived Major Carter of the ability to receive CRSC benefits. Despite the medical evidence regarding the effects of Agent Orange, the BCMR did not afford Major Carter the opportunity to argue the merits of his case. In fact, Major Carter has never been permitted to present the facts supporting his claim.

30. Major Carter files this action to obtain an LOD that the medical conditions from which he suffers were caused by service-related exposure to Agent Orange between 1974 and 1980. That declaration will aid in his ability to recover CRSC and VA benefits.

**<u>COUNT I</u>**

**THE BCMR'S ACTION WAS ARBITRARY AND CAPRICIOUS**

31. Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

32. The APA requires the Court to set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

33. Major Carter was exposed to Agent Orange from 1974 to 1980 while serving on C-123s as part of his duties in the Air Force Reserve. He developed numerous medical conditions as a result, including terminal prostate cancer, heart disease, and diabetes. For many years, the VA refused to acknowledge that crewmembers serving on C-123s after the Vietnam War ended were exposed to Agent Orange. In June 2015, in response to a report issued by the Institute of Medicine, the VA extended the presumption of service connection, on a prospective basis only, to crewmembers who served on C-123s after the war ended. Because the VA agreed to extend benefits on a prospective basis only, C-123 crewmembers seeking to obtain benefits covering their pre-June 2015 medical costs and other lost benefits, such as VA disability compensation,

need an LOD determination that their service was aboard contaminated C-123s, permitting VA to determine service connection for any Agent Orange illnesses.

34. The BCMR, however, refused to grant Major Carter an LOD determination because he failed to report his medical conditions within 180 days of his separation from service — notwithstanding the fact that medical science recognizes that the conditions were latent in nature and could not have been reported within 180 days of his separation from service. By denying Major Carter an LOD determination because he could not report his medical conditions before they were diagnosed, the BCMR abused its discretion and arbitrarily and capriciously prevented Major Carter from presenting the merits of his claim.

35. One of the principal purposes of the LOD determination is to facilitate the provision of military and veterans' benefits; the BCMR's failure to grant Major Carter's LOD determination has instead denied Major Carter access to benefits due to him. By imposing an artificial 180-day deadline for reporting latent disease processes, the BCMR contravened its own regulatory intent, and has therefore abused its discretion and acted in an arbitrary and capricious manner not in accordance with law.

36. The BCMR has the authority to waive the 180-day requirement when it is in the interests of justice to do so. Given that the VA and the Air Force refused for decades to recognize the hazards associated with post-war service on C-123s, and that it was impossible for Major Carter to have reported his medical conditions within 180 days due to the latency of his diseases, granting Major Carter an LOD determination would be in the "interests of justice." The BCMR's decision, however, runs counter to the interests of justice.

37. For Major Carter, the BCMR failed to consider whether it would be in the interest of justice to waive the 180 day filing deadline. Instead, the BCMR mechanically cited to the 180-

day rule without any further explanation. In doing so, the BCMR acted arbitrarily and capriciously and deprived Major Carter of any opportunity to receive benefits covering his pre-June 2015 medical costs.

38. Because the BCMR abused its discretion and acted in an arbitrary and capricious manner, the Court should compel the BCMR to issue Major Carter an LOD determination.

## COUNT II

## THE BCMR VIOLATED MAJOR CARTER'S DUE PROCESS RIGHTS

39. Plaintiff incorporates the foregoing paragraphs as if set forth in their entirety herein.

40. Under the APA, a person suffering a legal wrong or adversely affected or aggrieved by an agency action is entitled to judicial review.

41. The Fifth Amendment to the U.S. Constitution grants due process to every person with respect to deprivations of property interests.

42. Major Carter has a legitimate claim of entitlement to having his petition for an LOD determination be made on the merits.

43. Major Carter has a legitimate claim of entitlement to CRSC benefits to cover his medical costs arising from his exposure to Agent Orange.

44. By arbitrarily and capriciously imposing on Major Carter a 180-day filing deadline applicable only to veterans of the Air Force Reserve, the BCMR wrongfully denied Major Carter the ability to have his LOD determination heard on the merits, and thereby denied him any opportunity to obtain CRSC benefits.

45. By refusing to consider the merits of Major Carter's petition for an LOD determination and summarily denying his petition, the BCMR violated Major Carter's due process rights, and in doing so, it also violated the APA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a. hold that the BCMR's refusal to grant an LOD determination was arbitrary, capricious, an abuse of discretion, violative of Major Carter's due process rights, and/or otherwise not in accordance with law;

b. vacate the BCMR's finding that Major Carter is not entitled to an LOD determination;

c. direct the BCMR to issue an LOD determination that Major Carter experienced an Agent Orange exposure event;

d. award Plaintiff his attorneys' fees and costs, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

e. award any additional relief the Court deems just.

October 17, 2017

Respectfully submitted,

**PERKINS COIE LLP**

By: *s/ Andrew E. Shipley*

Andrew E. Shipley, Bar No. 1010836
AShipley@perkinscoie.com
Barak Cohen, Bar No. 485945
BCohen@perkinscoie.com
Andrew J. Victor, Bar No. 1022316
AVictor@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211

*Attorneys for Plaintiff Wesley T. Carter*